## FELDMAN v. GROSS.

### No. 28722.

United States District Court
N. D. Ohio, E. D.
June 10, 1952.

Edward . Lurie, Cleveland, Ohio, for plaintiff.

A. W. Thomas of Boer, Mierky, Thomas, McClelland & Handy, all of Cleveland, Ohio, for defendant.

FREED, District Judge.

Plaintiff, as Administrator of the Estate of Sarah Feldman, sues to recover compensation for wrongful death from the defendant, as Administratrix of the Estate of Saul K. Gross. The parties received their respective appointments in Cook County, Illinois. Plaintiff is a resident of Illinois; defendant is a resident of Pennsylvania. The action arises from an automobile accident which occurred in Columbiana County, Ohio. Defendant was personally served in Cuyahoga County, Ohio while she was paying a one day visit to a relative. The suit was originally instituted in the Common Pleas Court of Cuyahoga County, but was subsequently removed to this Court on defendant's motion. Defendant now moves to quash service and to dismiss the complaint on the ground that the Court is without jurisdiction over the defendant.

A single inquiry is presented: May a foreign administrator (administratrix) be sued in a state other than that of his appointment?

Section 10509–161 of the Ohio General Code provides:

"The several courts of probate, common pleas and superior courts, shall have the same power and authority over such foreign executors and administrators as if they were appointed under the laws of this state."

In Helme v. Buckelew, 1920, 229 N.Y. 363, 128 N.E. 216, 219, the Court of Appeals of New York, when called upon to determine the effect of an almost identical New York statute, construed it to be no more than a declaration of the common law rule permitting suits to be maintained against foreign executors and administrators to the extent of the decedent's property located within the state. Speaking through Judge Cardozo, the court said:

"I think the true view must, therefore, be that the statute removes disabilities, but does not terminate immunities. These are what they always were. Foreign administrators and executors may sue in the same manner as nonresidents, for comity may enlarge the measure of their rights as plaintiffs without encroaching upon the jurisdiction of other courts, or overstepping the limits of our own. Foreign administrators and executors may be sued in the same manner as nonresidents, but only when the subject-matter subjects them to the jurisdiction; for comity, though it may enlarge their rights, cannot, unless it is also the comity of the domicile, enlarge their liabilities, and there is nothing in the statute that unmistakably reveals a purpose to assume, in disregard of comity, a jurisdiction which the accepted principles and usages prevailing between different sovereignties have heretofore condemned."

In Thorburn v. Gates, D.C.S.D.N.Y., 1915, 225 F. 613, 616, Judge Learned Hand limited the effect of the same New York statute to situations wherein property of the decedent was discovered in New York. Judge Hand stated his views as follows:

"Section 1836a of the Code of Civil Procedure of New York must be read in the light of these general ideas regarding the status of executors. No doubt the state of New York, as respects goods situated within its own jurisdiction, might provide that an executor appointed elsewhere should be its own representative, and that process served upon him within its own borders should be effective to determine the disposition of all such goods. Stacy v. Thrasher [6 How. 44, 12 L.Ed. 337], supra; McLean v. Meek, 18 How. 16, 15 L.Ed. 277. Yet if it attempted to go further than this, to take any steps towards the disposition of decedent's goods situated elsewhere and under the existing administration of another state, it would violate the common understanding respecting such matters and expose itself to the disregard of its judgments by the state which had appointed the executor and assumed the direction of his official conduct. Moreover, since the fourteenth amendment, the assumption of such a jurisdiction which conflicted with the exclusive authority of another state over a matter within its jurisdic-

tion would itself be disregarded at the outset, at least in a federal court; nor would the executor be left to the assertion of the invalidity of such proceedings, when it was presented for execution or as evidence."

Compelling reasons prompt this Court to be in complete accord with these decisions. At common law a foreign personal representative was regarded as the agent of a foreign sovereignty and, as such was held to be without authority to bind the estate outside the state of his appointment. Brown v. Fletcher's Estate, 1908, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966; Burrowes v. Goodman, 2 Cir., 1931, 50 F.2d 92, 77 A.L.R. 249. He was held to be accountable only to the courts of the state of his appointment. A judgment against him in the court of a foreign sovereign registered "a futile effort", except as to the decedent's property situate within the jurisdiction of the foreign court. Helme v. Buckelew, supra.

Research of the law in Ohio led to but one adjudicated case in which the constitutionality of Ohio General Code, § 10509–160 was placed in question. In Craig v. Toledo, A. A. & N. M. R. R. Co., 1895, 3 Ohio Dec. 146, the Common Pleas Court of Lucas County rejected the contention that the statute should be limited in its application to instances wherein assets of the estate were found in Ohio.

Under the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, federal district courts are required to determine and follow the substantive law, both case and statutory, of the respective states where they are located. Generally speaking, the law of the state may be readily resolved from the decisions of the highest court of the state. In the absence of decisions of the highest court, the Erie-Tompkins rule has been extended to include the decisions of intermediate courts of appeal, except where it is convincingly found that the highest court of the state would rule in a contrary manner. Continental Casualty Co. v. Ohio Edison Co., 6 Cir., 1942, 126 F.2d 423; Leithauser v. Hartford Fire Ins. Co., 6 Cir., 1942, 124 F.2d 117. No case has been pointed out to the Court nor has independent research disclosed any in which the Erie-Tompkins rule has been held to apply to decisions of courts of original jurisdiction whose determinations are not binding on other courts within the state. In fact, in King v. Order of United Commercial Travelers, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608, the Supreme Court concluded that a federal district court sitting in South Carolina was not bound by the decisions of the South Carolina common pleas courts. In Clarke v. Baltimore & O. R. Co., 6 Cir., 196 F.2d 206, the Court of Appeals of this Circuit appears to indicate that a district court in Ohio was bound by a rule of law announced by a Common Pleas Court—a court of original jurisdiction—in Ohio. A careful reading of the opinion in the Clarke case reveals, however, that the court regarded the rule set forth in that Common Pleas decision simply a clear expression of the law as previously declared by the higher courts of the state.

In any event, the Craig case, supra, does not appear to constitute a clear-cut expression of Ohio law. The very words of the opinion clearly show that the decision resulted from timerity and misgiving to declare a statute unconstitutional. The Judge commented:

"I dislike very much to criticise or fail to follow such high authority; but I certainly cannot hold any statute of Ohio unconstitutional on the ground that it is 'contrary to natural justice or the principles of international law', although the New Jersey court did so hold. * * * It may be possible for the Federal courts to establish and follow such a rule, but it could not be possible for the great number of courts, of final and inferior jurisdiction, in the several states of the Union to do so."

The motion to quash service of summons will be sustained.